<u>**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**</u>

# FILED

Name  GUARDADO        PAUL         A.

     (Last)         (First)        (Initial)

JUL – 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Prisoner Number ___ E-36459

Institutional Address  CTF North, Rainer B, 344
P.O. Box 705, Soledad, Ca.  93960–0705

E-filing

(PR)  CW

CW

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

PAUL ALBERT GUARDADO

(Enter the full name of plaintiff in this action.)

CV  08    3268

J. DAVIS, CHAIRMAN, CALIFORNIA BOARD OF
PAROLE HEARINGS; Mr. CATA, DIRECTOR OF
CALIFORNIA DEPARTMENT OF CORRECTIONS;
B. CURRY, WARDEN, CTF, et al

(Enter the full name of respondent(s) or jailor in this action)

Case No. _____
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

<u>Read Comments Carefully Before Filling In</u>

<u>When and Where to File</u>

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were **not** convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS      - 1 -

1  <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12         (a)    Name and location of court that imposed sentence (for example; Alameda

13  County Superior Court, Oakland):

    Superior Court of California,    700 Civic Center Dr. West RM L100

14      County of Orange    P.O. Box 22024, Santa Ana, Calif.

                      92702

15      Court                Location

16         (b)    Case number, if known ___ C-70315 ___

17         (c)    Date and terms of sentence ___ 15 years to life ___

18         (d)    Are you now in custody serving this term? (Custody means being in jail, on

19      parole or probation, etc.)    Yes __XX__    No ____

20      Where?

21      Name of Institution:  Correctional Training Facility (Soledad)

                  CTF North, Rainer B, 344

22      Address: P.O. Box 705, Soledad, Ca. 93960-0705

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26      2nd degree homicide (California Penal code §187)

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS    - 2 -

3. Did you have any of the following?

Arraignment:                    Yes __XX__    No _____

Preliminary Hearing:            Yes __XX__    No _____

Motion to Suppress:             Yes _____    No __XX__

4. How did you plead?

Guilty _____    Not Guilty __XX__    Nolo Contendere _____

Any other plea (specify) __N/A_____

5. If you went to trial, what kind of trial did you have?

Jury __XX__    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?              Yes __XX__    No _____

7. Did you have an attorney at the following proceedings:

(a)    Arraignment              Yes __XX__    No _____

(b)    Preliminary hearing      Yes __XX__    No _____

(c)    Time of plea             Yes _____    No _____    N/A

(d)    Trial                    Yes __XX__    No _____

(e)    Sentencing               Yes __XX__    No _____

(f)    Appeal                   Yes __XX__    No _____

(g)    Other post-conviction proceeding    Yes _____    No __XX__

8. Did you appeal your conviction?    ****    Yes __XX__    No _____

This petition only deals with a parole hearing conducted in an illegal fashion. Thus, this information has been omitted.

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                 Yes _____    No _____

Year: _____    Result:_____

Supreme Court of California     Yes _____    No _____

Year: _____    Result:_____

Any other court                 Yes _____    No _____

Year: _____    Result:_____

(b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                    Yes __N/A__   No_____

2    (c)   Was there an opinion?                  Yes __N/A__   No_____

3    (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                                 Yes ___ N / A ___ No_____

5    If you did, give the name of the court and the result:

6    _____N/A_____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to
     This petition deals with only a parole hearing conducted

9    this conviction in any court, state or federal?   Yes_____   No_____
     in an illegal fashion. Therefore, this information has
     been omitted.

10   [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16   (a)   If you sought relief in any proceeding other than an appeal, answer the following

17         questions for each proceeding. Attach extra paper if you need more space.

18         I.    Name of Court: Superior Court of California, County of Orange
                 _____

19               Type of Proceeding: __Habeas Petition_____

20               Grounds raised (Be brief but specific):
                 1) Use Of The 30 Year Old Historical Facts Surrounding The Commitment
                    Offense That Occurred in 1979 When Petitioner Was A Juvenile For The

21         a.    Sixth Time To Deny Parole Violates Due Process; 2) Petitioners Alleged

22         b.    Direct Involvement In The Commitment Offense Is Not Same Evidence Showing
                 Said Direct Involvement Surpassed The "Particularly Egregious" Standard

23         c.    Necessary To Deny Parole Based Upon A Parole Applicants Personnel
                 Culpability Violating Due Process; 3) There Is No Evidence In The Record

24         d.    To Support The Boards Finding Petitioner Needed further Self Help Therapy
                 Violating Due Process.

25               Result: __DENIED_____ Date of Result: _3-17-2008_

26         II.   Name of Court: California Court of Appeals, 4th District
                 _____

27               Type of Proceeding: __Habeas Petition_____

28               Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

a. Same grounds as stated in question (a) I a, supra.

b. _____

c. _____

d. _____

Result: DENIED _____ Date of Result: 4-24-2008

III.  Name of Court: California Supreme Court

Type of Proceeding: Petition For Review

Grounds raised (Be brief but specific):

a. Same grounds as stated in question (a) I a, supra.

b. _____

c. _____

d. _____

Result: DENIED _____ Date of Result: June 25, 2008

IV.  Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes XX   No____

United States District Court, Northern District

Name and location of court: 1301 Clay St., Ste. 400S, Oakland, Ca. 94612-5212

(Habeas petition on my 2nd, 3rd, 4th & 5th parole hearing was GRANTED Case # C 05-0194 C W (P R)
but appealed by State to the 9th Circuit. Court Appointed counsel to
B. GROUNDS FOR RELIEF represent me in this matter; See Documents attached as Exhibit A & B).

State briefly every reason that you believe you are being confined unlawfully.  Give facts to

support each claim.  For example, what legal right or privilege were you denied?  What happened?

Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim One:_____PLEASE  SEE  PAGE  6–A  ATTACHED_____

6   _____

7   Supporting Facts:_____

8   _____

9   _____

10  _____

11  Claim Two:_____PLEASE  SEE  PAGE  6–A  ATTACHED_____

12  _____

13  Supporting Facts:_____

14  _____

15  _____

16  _____

17  Claim Three:_____PLEASE  SEE  PAGE  6–A  ATTACHED_____

18  _____

19  Supporting Facts:_____

20  _____

21  _____

22  _____

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 6 -

## CLAIM I

**USE OF THE 30 YEAR OLD HISTORICAL FACTS SURROUNDING
THE COMMITMENT OFFENSE THAT OCCURRED IN 1979 WHEN
PETITIONER WAS A JUVENILE FOR THE SIXTH TIME TO DENY
PAROLE VIOLATES DUE PROCESS OF LAW UNDER THE
FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

On September 25, 2007, Petitioner went to his 6th parole hearing at which
time the Board of Parole Hearings denied parole stating Petitioner "would pose an
unreasonable risk of danger to society, a threat to public safety if released from
prison" based on the totality of the circumstances surrounding the commitment
offense that occurred 30 years ago when Petitioner was a juvenile. (Parole
Transcripts pp. 57-60). The Board used the circumstances surrounding the
commitment offense at five prior parole hearings to deny parole and again at
Petitioners 6th parole hearing despite Petitioner surpassing his "minimum
number of years to be served" at the time of Petitioners 6th parole hearing
and accomplishing every single demand made by the Board in rehabilitation violating
due process of law.

## CLAIM II

**PETITIONERS ALLEGED DIRECT INVOLVEMENT IN THE
COMMITMENT OFFENSE IS NOT SOME EVIDENCE SHOWING SAID
DIRECT INVOLVEMENT SURPASSED THE "PARTICULARLY EGREGIOUS"
STANDARD NECESSARY TO DENY PAROLE BASED UPON A PAROLE APPLICANTS
PERSONNEL CULPABILITY VIOLATING DUE PROCESS OF LAW UNDER THE
FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

On September 25, 2007, Petitioner went to his 6th parole hearing at which
time the Board of Parole Hearings denied parole stating Petitioner "would pose an
unreasonable risk of danger to society, a threat to public safety if released from
prison" based on the totality of the circumstances surrounding the commitment
offense that occurred 30 years ago when Petitioner was a juvenile. (Parole
Transcripts pp. 57-60). The Board presented no evidence under the law that contains
an indicia of reliability that Petitioners alleged "direct involvement" in the
offense surpassed the "particularly egregious" level under the law to support a
denial of parole for the 6th time violating due process of law.

## CLAIM III

**THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT
THE BOARDS FINDING PETITIONER NEEDED FURTHER SELF HELP
THERAPY VIOLATING DUE PROCESS OF LAW UNDER THE
FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

On September 25, 2007, Petitioner went to his 6th parole hearing at which
time the Board of Parole Hearings denied parole stating "we find that you continue
to need therapy in a controlled setting in order to face, discuss, understand and cope
with stress in a non destructive manner. Also to have insights.... (Parole Transcripts
pp. 60-61). The Boards statement that Petitioner continues to need "therapy" as a
basis to deny parole for the 6th time was not supported by some evidence under the law
that contains an indicia of reliability showing Petitioner is a current risk if paroled
violating due process of law. Despite Petitioner accomplishing every single self help
therapy demanded by the Board for all six parole hearings, the Board has used the word
"therapy" to deny parole at all six hearings now.

6-A

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

           McQuillion v Duncan, 306 F.3d 895 (9th Cir 2002); Irons v Carey 505 F.3d 846 (9th Cir

3   of these cases: 2007); Biggs v Terhune 334 F.3d 910 (9th Cir 2003); In re Lee 143 Cal.App.4th 1400

    (2006); In re Smith 114 Cal.App.4th 343 (2003); In re Lawrence 150 Cal.App.4th 1511

4   (2007); In re Barker 151 Cal.App.4th 346 (2007); Rosenkrantz v Marshall 444 F.Supp.2d 1063 (C.D. Cal

    2006); Sanchez v Kane 444 F.Supp.2d 1049 (C.D. Cal 2006); Martin v Marshall 431 F.Supp.2d 1038

5   (N.D. Cal 2006); In re Elkins 144 Cal.App.4th 475 (2007); In re Ramirez 94 Cal.App.4th 549 (2001);

6   In re Smith 109 Cal.App.4th 504 (2003); In re Deluna 126 Cal.App.4th 585 (2005); People v Spears

    33 Cal.3d 279, 282 (1983); In re Singler 161 Cal.App.4th 281, 73 Cal.Rptr.3d 864 (2008);

7   In re Rosenkrantz 26 Cal.4th 616 (2002); In re Scott 34 Cal.Rptr.3d 905 (2005).

       Do you have an attorney for this petition?                Yes_____   No__XXX__

8   If you do, give the name and address of your attorney:

9        N/A

    _____

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on ___July 3, 2008_____         _Paul Guardado_____

14              Date                           Signature of Petitioner

                                          Paul Albert Guardado, In Pro Se

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 7 -

United Sta.   **District Court**
For the Northern District of California

1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                    No. C 05-0194 CW

11   PAUL ALBERT GUARDADO,

12              Petitioner,            ORDER GRANTING PETITION FOR
                                       WRIT OF HABEAS CORPUS
13       v.

14   MARGARITA PEREZ, et al.,

15              Respondents.
                                    /
16

17       On January 12, 2005, Petitioner Paul Albert Guardado, a state

18   prisoner incarcerated at the Correctional Training Facility at

19   Soledad, filed a petition for a writ of habeas corpus pursuant to

20   28 U.S.C. § 2254.  The petition is directed to a denial of parole

21   by the Board of Prison Terms[1] (Board).  The Court ordered

22   Respondent to show cause why the writ should not be granted.  On

23   July 17, 2007, Respondent filed an answer and lodged a copy of the

24   records of the state proceedings.  Petitioner timely filed a

25   traverse.  For the reasons set forth below, the petition is granted

26   and the matter is remanded to the Board to reevaluate Petitioner's

27

28       [1]The Board of Prison Terms was abolished effective July 1, 2005
     and replaced with the Board of Parole Hearings.  Cal. Penal Code
     § 5075(a).

1  suitability for parole.

2                              BACKGROUND

3  I. Facts

4      The California Court of Appeal, in affirming Petitioner's

5  conviction of second degree murder, described the following facts:

6          On the night of February 24, 1979, a group
           of youths, including Guardado, Ramirez, Vincent
7          Orozco, Kim Arganda, Manuel Ybarra, Corina
           Ribota and Ralph Ponce, gathered in
8          Westminster's Sigler Park.  At about 10 p.m.,
           Ybarra drove Guardado, Orozco and Arganda to a
9          nearby liquor store.  On the way back, rear
           passengers Guardado and Orozco asked for their
10         handguns.  Arganda and Ybarra retrieved the
           guns from under the front seat and passed them
11         back.  Guardado suggested they stop and assault
           people they passed, saying, "I don't like the
12         way that person looks . . . let's get him."
           Rather than stopping, Ybarra returned to the
13         park.
               At 11:30 p.m., Steven Buus walked through
14         the park wearing a black hat.  Ribota pointed
           him out to the others, saying, "I want that
15         hat."  Some of the youths, including Guardado,
           Orozco and Ramirez, ran to Buus and began
16         beating and kicking him.  Then, Guardado,
           Orozco and others encircled Buus while Ramirez
17         kicked him some more.  As Buus lay on the
           ground, Ribota took his hat, tried it on and
18         then tossed it away.
               After turning away from the scene, Ribota
19         heard a gunshot.  She looked back and saw
           Guardado, Ramirez and Orozco standing over
20         Buus.  Guardado was holding a gun and Buus was
           begging for his life.  Ramirez then drew a
21         sawed-off shotgun from beneath his coat and
           shot Buus in the heart.
22             Buus' autopsy revealed he was shot three
           times.  One small-caliber bullet was fired into
23         his back from close range.  The bullet was too
           fragmented to be identified.  A .22-caliber
24         bullet was fired into Buus' chest on the left
           side, causing injuries which would have been
25         fatal without medical treatment.  It could not
           be determined whether these two shots were
26         fired from the same gun.  The shotgun blast
           destroyed Buus' heart.  He also had head
27         injuries from the beating, which would have
           killed him if left untreated.
28             No one came forward with any information

                                  2

1 | about the shooting until 1984, when Ribota,
hoping to collect a reward, gave a detailed
2 | interview to authorities.  The police arrested
Guardado in 1988, when he was 26 years old.
3 |       At trial, Guardado claimed Ponce was the
one who shot Buus before Ramirez finished him
4 | off with the shotgun.  Guardado admitted having
a gun during the trip to the liquor store but
5 | said he left it in Ybarra's car when they
returned to the park.  Orozco testified he took
6 | his gun (a .22) from the car but eventually
gave it to Ponce, who shot Buus.

People v. Guardado, No. G-017962, slip op. at 2-3 (Cal. App. 4th

1997).

At his 2006 parole hearing, the Board described Petitioner's

recent prison record:

You remained assigned to the vocational print
shop.  You received a laudatory chrono dated
June 18, '04 noting the exceptional talent and
valuable skills as a graphic artist.  It says
you designed IST bulletin covers, institution
posters and you were considered a valuable
asset and a peer trainer.  There was no
academics during this period.  It says that you
participated in AA based on various chronos.
You also participated in the Children's
Festival, Christmas Festival and it says
apparently you designed many of the
decorations.  These are listed on the chrono.
And in February 6, '04 you completed a three
week Anger Management program Cage Your Rage.
It also says here that you also received
recognition for Legal Services For Prisoners
With Children Seminar based on a chrono from
June '05.  There was no psychiatric treatment,
no discipline.  And the counselor writes here
that: "Guardado has programmed very well and
continues to do well with both staff and
peers." . . .  I got an Anger Management
program, a 12-week program through the
Protestant Chapel in December '05. . . .  And
you also took the Anger Management video series
Healing For the Angry Heart, February 6.

Resp't Ex. 7 at 39-41.

United Sta.  District Court
For the Northern District of California

3

The Board continued:

> What I noted is that you completed the
> vocational graphic arts program in '03. And
> you also completed the Paralegal Institute
> Associate Degree Program for paralegal studies
> in '98. That was in the vocational areas. In
> terms of skills that you could carry outside, I
> noted that some of the other jobs you've held,
> and I'm not going to go over all of them, point
> out that you have stayed busy and you've had
> good reports in textiles. You've held various
> clerical positions. You've been a porter. Got
> your GED through the Jobs Corps in 1980. . . .
> You've done the various HIV, TB, AIDS, STD's
> etcetera in 2000. You did the 30-hour
> Parenting program through Friends Outside in
> 2000. And the Path to Peace, '02. That was a
> 12-week program. Addiction Recovery program, I
> think that was the one of the Islam programs.
> . . . Disciplinaries, you've had one 115.
> That was for mutual combat. That was October
> 21, '98. One 128, April 14, '93 for not having
> clean living quarters and clothing. . . . It
> is commendable. There hasn't been any violence
> since '98. And I want to point that out.

Resp't Ex. 7 at 43–45.

II.  Procedural History

In 1988, Petitioner was found guilty of second degree murder
with use of a firearm and was sentenced to seventeen years to life
(fifteen years for second-degree murder and two years for the
firearm). Petitioner was received in prison on November 16, 1989,
and his life term began on July 4, 1990. In 1994, the Ninth
Circuit granted Petitioner's writ of habeas corpus, reversed the
trial court's judgment, and remanded his case for re-trial.
Guardado v. Stainer, No. 92-56190, slip op. at 2 (9th Cir. 1994).

Upon retrial, Petitioner was again convicted of second-degree
murder with use of a firearm. He received a seventeen years to
life sentence (fifteen years for second-degree murder and two years
for the firearm). The state court of appeal affirmed the

4

1  conviction.  People v. Guardado, No. G-017962, slip op. at 1 (Cal.

2  App. 4th 1997).

3      Since 2002, Petitioner has been denied parole four times.  In

4  2002, 2003 and 2004, the Board found that Petitioner was unsuitable

5  for parole based on the commitment offense, which was carried out

6  in a cruel and callous manner and demonstrated callous disregard

7  for human suffering.  Resp't Ex. 4 at 80; Resp't Ex. 5 at 67;

8  Resp't Ex. 6 at 81.  Each time, the Board also found that the

9  victim was abused during the murder and that the motive for the

10  crime was inexplicable.  Id.  The Board found that Petitioner

11  needed to learn how to deal with stress in a non-destructive

12  manner.  Resp't Ex. 4 at 82; Resp't Ex. 5 at 71; Resp't Ex. 6 at

13  85.  In 2002 and 2003, the Board noted that Petitioner had a stable

14  social history.  Resp't Ex. 4 at 81, Resp't Ex. 5 at 69.  In 2004,

15  however, the Board described Petitioner's social history as

16  unstable based on the same information it had before it in 2002 and

17  2003.  Resp't Ex. 6 at 83.  In 2003, the Board found for the first

18  time that Petitioner's criminal record showed an escalating pattern

19  of violence.  Resp't Ex. 5 at 68.  Petitioner was convicted of

20  malicious mischief to a vehicle in violation of Cal. Vehicle Code

21  § 10853 in 1979 and of driving under the influence of alcohol in

22  1982, both after he had committed the commitment offense, but

23  before he was apprehended for it.  Resp't Ex. 4 at 81.  In 2004,

24  based on the same record, the Board found instead that Petitioner

25  had an escalating pattern of "contact with law enforcement

26  agencies."  Resp't Ex. 6 at 83.

27      After each denial, Petitioner filed a petition for writ of

28  habeas corpus in the Orange County Superior Court.  The court

United Sta.  Jistrict Court
For the Northern District of California

1  denied his petitions and found that the facts of the murder

2  provided some evidence to support the Board's decision.  <u>In re</u>

3  <u>Guardado</u>, No. M-9845, slip op. at 3 (Cal. Super. Ct. 2003);  <u>In re</u>

4  <u>Guardado</u>, No. M-10347, slip op. at 2 (Cal. Super. Ct. 2005);  <u>In re</u>

5  <u>Guardado</u>, No. M-10506, slip op. at 5 (Cal. Super. Ct. 2005).  Upon

6  each denial, Petitioner filed a petition for writ of habeas corpus

7  with the California appellate court and California Supreme Court;

8  both summarily denied his petitions.  <u>In re Guardado</u>, No. G-032023,

9  slip op. at 1 (Cal. Ct. App. 4th 2002); <u>In re Guardado</u>, No. S-

10  120982, slip op. at 1 (Cal. 2004); <u>In re Guardado</u>, No. H-028442,

11  slip op. at 1 (Cal. Ct. App. 6th 2005); <u>In re Guardado</u>, No. S-

12  131931, slip op. at 1 (Cal. 2005); <u>In re Guardado</u>, G-035509, slip

13  op. at 1 (Cal. Ct. App. 4th 2005); <u>In re Guardado</u>, S-135618, slip

14  op. at 1 (Cal. 2005).

15      In 2006, the Board found that Petitioner was unsuitable for

16  parole based on the commitment offense and his lack of insight and

17  understanding of his part in the murder.  Resp't Ex. 7 at 98.

18  Referring to Petitioner's account of the crime, the Board stated,

19  "We just simply don't find you believable." <u>Id.</u> at 99.  The Board

20  continued by asking Petitioner, "[I]f you have no insight into your

21  behavior, how can you correct it?"  <u>Id.</u>  The Board concluded that

22  nothing indicated that Petitioner had come to terms with the fact

23  that he was a participant in the crime, <u>id.</u> at 101, and that he

24  "absolutely didn't demonstrate any remorse whatsoever," <u>id.</u> at 104.

25  The Board commended Petitioner on his progress in programs and the

26  "tremendous amount of work" he did while in the institution.  <u>Id.</u>

27  at 100, 105.  In closing, the Board stated it was "very, very

28  concerned for public safety" and considered Petitioner "one of the

United Stat. District Court
For the Northern District of California

1   most dangerous people the State could have." Id. at 104.

2       Petitioner filed a petition for writ of habeas corpus in the

3   Orange County Superior Court challenging the Board's 2006 decision.

4   In re Guardado, No. M-11035, slip op. at 3 (Cal. Super. Ct. 2006).

5   The court denied his petition and found that the Board's decision

6   was supported by some evidence. Id. The court found that the

7   Board pointed to the facts of the commitment offense, which

8   exceeded the minimum elements necessary for the crime. Id. The

9   court never reached Petitioner's claim that the Board's continuous

10  use of the commitment offense to deny parole violated due process.

11  Id. at 4. Petitioner filed his petition for a writ of habeas

12  corpus in the California appellate court and the California Supreme

13  Court; both summarily denied his petitions. In re Guardado, No. G-

14  037843, slip op. at 1 (Cal. Ct. App. 4th 2007); In re Guardado, No.

15  S-149934, slip op. at 1 (Cal. 2007).

16      Petitioner filed three separate federal habeas corpus

17  petitions challenging the Board's 2002, 2003, 2004 decisions.  On

18  March 8, 2006, the three petitions were consolidated into this

19  case.  On September 20, 2006, the Court granted Petitioner's motion

20  for appointment of counsel.  On May 15, 2007, the Court

21  consolidated into this case Petitioner's fourth habeas corpus

22  petition challenging the Board's 2006 decision.

                              DISCUSSION

24  I. Standard of Review

25      The petition in this case was filed after the effective date

26  of the Antiterrorism and Effective Death Penalty Act of 1996

27  (AEDPA), so the provisions of that act apply. Lindh v. Murphy, 521

28  U.S. 320, 327 (1997); McQuillion v. Duncan, 306 F.3d 895, 901 (9th

United Stat. District Court
For the Northern District of California

1  Cir. 2002).

2      Under the AEDPA, a district court may not grant habeas relief

3  unless the state court's adjudication of the claim: "(1) resulted

4  in a decision that was contrary to, or involved an unreasonable

5  application of, clearly established Federal law, as determined by

6  the Supreme Court of the United States; or (2) resulted in a

7  decision that was based on an unreasonable determination of the

8  facts in light of the evidence presented in the State court

9  proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

10 362, 412 (2000).  The first prong applies both to questions of law

11 and to mixed questions of law and fact, Williams, 529 U.S. at 407-

12 09, while the second prong applies to decisions based on factual

13 determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

14     A state court decision is "contrary to" Supreme Court

15 authority, that is, falls under the first clause of § 2254(d)(1),

16 only if "the state court arrives at a conclusion opposite to that

17 reached by [the Supreme] Court on a question of law or if the state

18 court decides a case differently than [the Supreme] Court has on a

19 set of materially indistinguishable facts."  Williams, 529 U.S. at

20 412-13.  A state court decision is an "unreasonable application of"

21 Supreme Court authority, under the second clause of § 2254(d)(1),

22 if it correctly identifies the governing legal principle from the

23 Supreme Court's decisions but "unreasonably applies that principle

24 to the facts of the prisoner's case."  Id. at 413.  The federal

25 court on habeas review may not issue the writ "simply because that

26 court concludes in its independent judgment that the relevant

27 state-court decision applied clearly established federal law

28 erroneously or incorrectly."  Id. at 411.  Rather, the application

1  must be "objectively unreasonable" to support granting the writ.

2  See id. at 409.

3      "Factual determinations by state courts are presumed correct

4  absent clear and convincing evidence to the contrary." Miller-El,

5  537 U.S. at 340.  A petitioner must present clear and convincing

6  evidence to overcome § 2254(e)(1)'s presumption of correctness;

7  conclusory assertions will not do.  Id.  Although only Supreme

8  Court law is binding on the States, Ninth Circuit precedent remains

9  relevant persuasive authority in determining whether a state court

10 decision is objectively unreasonable.  See Clark v. Murphy, 331

11 F.3d 1062, 1069 (9th Cir. 2003).

12     When there is no reasoned opinion from the highest state court

13 to consider the petitioner's claims, the court looks to the last

14 reasoned opinion to analyze whether the state judgment was

15 erroneous under the standard of § 2254(d).  Ylst v. Nunnemaker, 501

16 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072,

17 1079 n.2 (9th Cir. 2000).

18 II. Analysis

19     The Supreme Court has clearly established that a parole

20 board's decision deprives a prisoner of due process with respect to

21 his constitutionally protected liberty interest in a parole release

22 date if the board's decision is not supported by "some evidence in

23 the record," or is "otherwise arbitrary." Sass v. California Bd.

24 of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (citing

25 Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  When assessing

26 whether a state parole board's suitability determination was

27 supported by "some evidence," the court's analysis is framed by the

28 statutes and regulations governing parole suitability

United Sta.    District Court
For the Northern District of California

1    determinations in the relevant State.  Id.  Accordingly, in

2    California, the court must look to California law to determine the

3    findings that are necessary to deem a prisoner unsuitable for

4    parole, and then must review the record to determine whether the

5    state court decision constituted an unreasonable application of the

6    "some evidence" principle.  Id.

7        California law provides that a parole date is to be granted

8    unless it is determined "that the gravity of the current convicted

9    offense or offenses, or the timing and gravity of current or past

10   convicted offense or offenses, is such that consideration of the

11   public safety requires a more lengthy period of incarceration

12   . . ."  Cal. Penal Code § 3041(b).

13       The California Code of Regulations sets out the factors

14   showing suitability or unsuitability for parole that the Board is

15   required to consider.  See 15 Cal. Code Regs. § 2402(b).  These

16   include "[a]ll relevant, reliable information available," such as,

17           the circumstances of the prisoner's social
             history; past and present mental state; past
18           criminal history, including involvement in
             other criminal misconduct which is reliably
19           documented; the base and other commitment
             offenses, including behavior before, during
20           and after the crime; past and present attitude
             toward the crime; any conditions of treatment
21           or control, including the use of special
             conditions under which the prisoner may safely
22           be released to the community; and any other
             information which bears on the prisoner's
23           suitability for release.  Circumstances which
             taken alone may not firmly establish
24           unsuitability for parole may contribute to a
             pattern which results in finding of
25           unsuitability.

26   Id.

27       Circumstances tending to show unsuitability for parole include

28   the nature of the commitment offense and whether "[t]he prisoner

United Sta. , District Court
For the Northern District of California

10

1  committed the offense in an especially heinous, atrocious or cruel
2  manner." Id. at (c). This includes consideration of the number of
3  victims, whether "[t]he offense was carried out in a dispassionate
4  and calculated manner," whether the victim was "abused, defiled or
5  mutilated during or after the offense," whether "[t]he offense was
6  carried out in a manner which demonstrates an exceptionally callous
7  disregard for human suffering," and whether "[t]he motive for the
8  crime is inexplicable or very trivial in relation to the offense."
9  Id.

10     Other circumstances tending to show unsuitability for parole
11  are a previous record of violence, an unstable social history,
12  previous sadistic sexual offenses, a history of severe mental
13  health problems related to the offense, and serious misconduct in
14  prison or jail. Id.

15     Circumstances tending to support a finding of suitability for
16  parole include no juvenile record, a stable social history, signs
17  of remorse, that the crime was committed as a result of significant
18  stress in the prisoner's life, a lack of criminal history, a
19  reduced possibility of recidivism due to the prisoner's present
20  age, that the prisoner has made realistic plans for release or has
21  developed marketable skills that can be put to use upon release,
22  and that the prisoner's institutional activities indicate an
23  enhanced ability to function within the law upon release. Id. at
24  (d).

25     Respondents argue that California inmates do not have a
26  federally protected liberty interest in parole release and that the
27  Ninth Circuit's holding to the contrary in Sass, 461 F.3d at 1128,
28  is not clearly established federal law for the purposes of AEDPA.

United Sta... District Court
For the Northern District of California

United Sts.   District Court
For the Northern District of California

1   However, this Court is bound by Ninth Circuit authority.

2       Respondents next contend that even if California prisoners do

3   have a liberty interest in parole, the due process protections to

4   which they are entitled by clearly established Supreme Court

5   authority are limited to an opportunity to be heard and a statement

6   of reasons for denial.  This position, however, has likewise been

7   rejected by the Ninth Circuit, which held in <u>Irons</u> that a

8   prisoner's due process rights are violated if the Board's decision

9   is not supported by "some evidence in the record," or is "otherwise

10  arbitrary."  The "some evidence" standard identified is thus

11  clearly established federal law in the parole context for purposes

12  of § 2254(d).  <u>See</u> <u>Sass</u>, 461 F.3d 1128-1129.

13      The Board explained that it based its denial primarily on the

14  commitment offense.  It is undeniable that the offense was heinous,

15  atrocious and cruel, demonstrating a callous disregard for human

16  suffering.  These facts will never change.  However, the Ninth

17  Circuit has held that continuous reliance over time on static

18  factors such as the commitment offense could violate due process.

19  <u>See</u> <u>Hayward v. Marshall</u>, 512 F.3d 536, 545 (9th Cir. 2008); <u>Irons</u>

20  <u>v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007); <u>Sass</u>, 461 F.3d at

21  1129; <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-917 (9th Cir. 2003).

22  The Ninth Circuit has not specified the number of denials or the

23  length of time served beyond the minimum sentence that would

24  constitute a due process violation, but Petitioner has served more

25  than his minimum sentence and has been denied parole by the Board

26  five times.  The question is whether it is reasonable to find after

27  almost thirty years that the facts of the offense constitute some

28  evidence that Petitioner would be a danger to society if released.

12

United Sta.., District Court
For the Northern District of California

1    Other evidence before the Board weighed against a finding that

2    Petitioner is currently dangerous.  Both Petitioner's 1999 and 2004

3    psychological reports conclude that Petitioner's violence potential

4    if released into the community is "no more than the average citizen

5    in the community."  Pet'r Att'y Decl. Ex. B-1 at 5; Ex. D-1 at 3.

6    The 1999 report, which was before the Board at all of his hearings,

7    stated that his "prognosis for successful community living is

8    good."  Pet'r Att'y Decl. Ex. B-1 at 3.  Petitioner's 2002 Life

9    Prisoner Evaluation Report stated that Petitioner would pose a

10   moderate degree of threat to the public if released from prison.

11   Pet'r Att'y Decl. Ex. B-2 at 1.  His 2003 Life Prisoner Evaluation

12   Report stated, "Considering the commitment offense, prior record

13   and prison adjustment, this writer believes that the prisoner would

14   probably pose a low degree of threat to the public at this time, if

15   released from prison . . . I feel he has the proportionate

16   ingredients for successful reintegration into society."  Pet'r

17   Att'y Decl. Ex. C-2 at 5.  His 2004 Life Prisoner Evaluation Report

18   stated that he "has evolved into a rational, responsible and

19   insightful person and I believe if he was released from prison, he

20   would pose no more than a low degree of threat to the public."

21   Pet'r Att'y Decl. Ex. D-2 at 2.

22       The only other factors the Board cited for its conclusion that

23   Petitioner remained dangerous were what it called his lack of

24   insight, Resp't Ex. 7 at 98, and lack of remorse, id. at 104.  It

25   appears that the Board equated Petitioner's lack of insight with

26   his denial that he was the shooter.  The Board explained:

27       I'm troubled by the way by the fact that
         Justice Caudill's letter to the Governor states
28       factors that involve your case that are unusual

13

United Sta..., District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and it says that "even though he was 17 years
of age when the crime was committed and he was
convicted on the theory of aiding, abetting the
individuals who actually committed the crime"
and you were convicted of second degree murder
with the use of a firearm twice, even after the
first Appellate decision upheld the hearsay
issue. That concerns me. I don't think you
are necessarily being straightforward and
honest with anyone. . . . And we accept the
findings of the court to be true and we refer
to the Appellate decision. And therefore, we
have to make a comparison in order to establish
insight. And we don't feel like you have any.

Id. at 102-03. However, the California Penal Code provides that

the Board "shall not require, when setting parole dates, an

admission of guilt to any crime for which an inmate was committed."

Cal. Penal Code § 5011(b). See also 15 Cal. Code Regs. § 2236

(same). Further, the appellate court affirmed Petitioner's

conviction of second-degree murder on an aiding and abetting

theory. Petitioner clearly admits his guilt of second degree

murder as an aider and abettor.

The Board's finding that Petitioner's description of the crime

is not believable is based on the following:

we have looked back at some of the things you
said and that really concern us. They're just
subtle things, subtle differences. You talk of
the fact that Ralph stepped in front of you and
fired the weapon and that you thought that
might be why the witness thought it was you
that fired the weapon. And then another time
you talked about being at least five feet away
when he fired the weapon. The way you
characterize your participation in this crime
as I said is as if you weren't even part of the
mix. You stated that some times you
participate in chasing Mr. Buus and that you
were one of the people surrounding him. You
said that at other times that you simply
followed one of your crime partners because you
thought there was going to be a fight and you
knew that there was going to be a fight. This
was certainly for one thing no fight. This was
a horrible, violent, disgusting, brutal attack

14

> on an innocent young man who was incredibly
> outnumbered and who spent the last of his life
> in absolutely abject terror.  It was -- This
> was a horrible crime.  And there was nothing
> that we saw today that indicated to us that you
> were a participant in the crime.

Resp't Ex. 7 at 100-101.  Being five feet away from Ralph and being behind him are not inconsistent.  Similarly, Petitioner's admission that he participated in chasing the victim, and his statement that he followed others to a fight with the victim are not inconsistent.

The Board was clearly incorrect in its statement that Petitioner "absolutely did not demonstrate any remorse whatsoever . . ."  Id. at 104.  Petitioner has expressed remorse for his crime and sorrow for the victim and his family.  In a 2004 letter, he states, "I cannot give Steven his life back or his family back the young man which my wrongdoing helped deprive them of.  The best I can do and will do, with God's help and yours, is give back to the community in Steven Buus' memory."  Pet'r Decl. Ex. D-2 at 3.  The sincerity of Petitioner's remorse is backed up by the evaluations of him by others, including psychologists and prison staff.  His 1999 psychological report, which was before the Board at all of his hearings, opines that he "states demonstrated understanding regarding the circumstances leading to the commitment offense and his empathy for the victim appeared to be genuine."  Pet'r Att'y Decl. Ex. B-1 at 3, 4.  His 2004 psychological report added that he "accepted responsibility for leaving the scene, and for the many years of suffering which resulted for the family of the victim."  Pet'r Att'y Decl. Ex. D-1.  Petitioner's 2003 Life Prisoner Evaluation Report stated that he "makes no excuses for his past behavior and above all he expresses a sincere heartfelt based

15

1  remorse for his part in the tragic occurrence that fateful day and

2  for the continued adverse affects it has had on the victim's family

3  and his own. . . .  He soulfully feels for all concerned and cannot

4  change what occurred.  He will forever make amends in his heart."

5  Pet'r Att'y Decl. Ex. C-2 at 5.

6      Because the Board is precluded from relying on Petitioner's

7  failure to admit a particular version of the commitment offense,

8  and because the Board was clearly wrong in its assessment that

9  Petitioner has expressed no remorse, the commitment offense is the

10  only evidence of present dangerousness.  The question remains

11  whether the commitment offense constitutes some evidence of present

12  dangerousness.

13      Petitioner demonstrates the other factors that indicate his

14  suitability for parole.  He has no juvenile record.  He has a

15  relatively minor record of convictions, which includes no

16  convictions involving violence other than the commitment offense.

17  He has expressed apparently sincere remorse, as discussed above.

18  Although the Board's findings on this point have been inconsistent,

19  he has a stable social history, evidenced by his 1999 and 2004

20  psychological reports.  Pet'r Att'y Decl. Ex. B-1 at 1; Ex. D-1 at

21  1.  He married and fathered two sons, now grown, after the

22  commitment offense but before he was arrested for it.  Petitioner's

23  present age of forty-six years suggests a reduced possibility of

24  recidivism.  He has made realistic plans for release, as evidenced

25  by letters from many members of his family indicating that they can

26  assist him with employment and housing.  Resp't Ex. 7 at 24-30.

27  Petitioner's educational achievements, including his GED, AA, and

28

United Sta    District Court
For the Northern District of California

16

1  Paralegal Certificate, have given him marketable skills that can be

2  put to use on release.  His institutional activities, such as

3  rehabilitation programs and vocational and charitable work,

4  indicate an enhanced ability to function within the law upon

5  release.

6      The circumstances tending to indicate a petitioner's

7  unsuitability for parole are not applicable to Petitioner.  He has

8  no record of convictions for violent offenses other than the

9  commitment offense.  He does not have an unstable social history.

10  He has committed no sadistic sexual offense, he has no history of

11  mental health problems and he has committed no serious misconduct

12  in prison.  His disciplinary history consists of one instance of

13  mutual combat in 1998 and a failure to clean his cell in 1993.

14      The last reasoned state court opinion is that of the Orange

15  County Superior Court.  That court concluded that the record

16  contained "some evidence" to support the Board's finding that

17  Petitioner was unsuitable for parole.  In re Guardado, No. M-11035,

18  slip op. at 3.  However, the state court misstated the "some

19  evidence" test.  The state court found that the Board's recitation

20  of the facts of the crime was "some evidence" to support the

21  Board's conclusion that the crime was "horrible," and therefore the

22  Board was "not required to engage in further analysis."  Id. at 3-

23  4.  The Ninth Circuit has explained that the "test is not whether

24  some evidence supports the reasons the [Board] cites for denying

25  parole, but whether some evidence indicates a parolee's release

26  unrealistically endangers public safety" and that "some evidence of

27  the existence of a particular factor does not necessarily equate to

28

United Sta.. District Court
For the Northern District of California

United Sta.  District Court
For the Northern District of California

1  some evidence the parolee's release unreasonable endangers public

2  safety."  Hayward, 512 F.3d at 543 (citing In re Lee, 143 Cal. App.

3  4th 1400, 1408 (2006)).

4      The state court failed to note that, over time, the Board's

5  continuous reliance upon an unchanging factor--Petitioner's

6  commitment offense--may violate his due process right.  Here,

7  Petitioner's crime was committed decades ago, when he was seventeen

8  years old.  An unusual circumstance which bears on the predictive

9  quality of the commitment offense is that Petitioner was not

10  charged with the crime until ten years later; during that period,

11  he was not convicted of any violent crime.  While the Board may

12  base its denial on the gravity of the commitment offense alone,

13  over time, this "'runs contrary to the rehabilitative goals

14  espoused by the prison system and could result in a due process

15  violation.'"  Id. at 545 (quoting Biggs, 334 F.3d at 915).  As time

16  passes, the commitment offense becomes such an unreliable predictor

17  of a petitioner's present and future dangerousness that it does not

18  satisfy the "some evidence" standard.  Id. at 546.  The state court

19  did not point to any other evidence of present dangerousness.

20      In light of Petitioner's entire record--including his age at

21  the time of the crime, his violence-free years before he was

22  arrested, his lengthy incarceration, his rehabilitation through

23  education, good conduct and charitable work--his commitment

24  offense, which occurred twenty-nine years ago, no longer

25  constitutes "some evidence" that his release will pose an imminent

26  danger to public safety.  See Hayward, 512 F.3d at 546.  The

27  Board's continued reliance upon the commitment crime alone violated

28

18

1   Petitioner's due process rights, and the state court's contrary

2   finding was an unreasonable application of Supreme Court law.

3                              CONCLUSION

4       For the reasons stated above, the petition for a writ of

5   habeas corpus is GRANTED.  The Court remands to the Board to hold a

6   new hearing within sixty days and re-evaluate Petitioner's

7   suitability for parole in accordance with this order.  All pending

8   motions are terminated.  A separate judgment shall issue, and the

9   Clerk is directed to close the file.  Each party shall bear his or

10  her own costs.

11      IT IS SO ORDERED.

12          4/9/08

13  Dated:_____

                                    _____
14                                  CLAUDIA WILKEN
                                    United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United Sta.. District Court**
**For the Northern District of California**

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                                          No. C 05-00194 CW

6    PAUL ALBERT GUARDADO,                 **JUDGMENT**

7              Petitioner,

8         v.

9    MARGARITA PEREZ, Chairwoman, Board of
     Prison Terms; JEANE WOODFORD,
10   Director, California Department of
     Corrections; A. P. KANE, Warden,

11            Respondents.

12   _____/

13

14        For the reasons set forth in this Court's Order Granting

15   Petition for Writ of Habeas Corpus,

16        IT IS ORDERED AND ADJUDGED

17        That Petitioner Paul Albert Guardado' Petition for Writ of

18   Habeas Corpus is granted.  The Court remands to the Board of Parole

19   Hearings to hold a new hearing within sixty (60) days and re-

20   evaluate Petitioner's suitability for parole in accordance with

21   this Court's Order.  Each party shall bear its own costs of action.

22        Dated at Oakland, California, this 9th day of April, 2008.

23                             RICHARD W. WIEKING
                               Clerk of Court
24

25

26                   By:     _Sheilah Cahill_____

27                           SHEILAH CAHILL
                             Deputy Clerk
28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  JENNIFER A. NEILL
   Supervising Deputy Attorney General
5  JESSICA N. BLONIEN, State Bar No. 189137
   Supervising Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 327-3893
8   Fax: (916) 322-8288
    Email: Jessica.Blonien@doj.ca.gov
9
   Attorneys for Respondents
10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15  **Paul Alberto Guardado,**                    C-05-0194 CW (PR)

16                              Petitioner,       NOTICE OF APPEAL

17                  v.

18  **Margarita Perez, Chairwoman, BPT, et al.,**

19                              Respondents.

20

21       PLEASE TAKE NOTICE that Respondent appeals to the United States Court of Appeals

22  for the Ninth Circuit from the order and judgment entered in this action on April 9, 2008.

23  / / /

24  / / /

25  / / /                    — Exhibit B —

26  / / /

27  / / /

28  / / /

   Not. of Appeal

                                                  *Guardado v. Perez, et al.*
                                                  C-05-0194 CW (PR)

Paul Guardado, #36454
CTF North, Raver B, 344
PO Box 705
Soledad, Calif 93960-0705

United States District Court
Northern District of California
U.S. Court house
450 Golden Gate Ave.
San Francisco, Calif.
94102-3483






United States Postal Service
DELIVERY CONFIRMATION

0306 0070 0001 6221 7394

PRIORITY
MAIL
www.usps.com